1   F. Christopher Austin (Nevada Bar No. 6559)
    caustin@weidemiller.com
2   **WEIDE & MILLER, LTD.**
    10655 Park Run Drive, Suite 100
3   Las Vegas, NV 89144
    Telephone: (702) 382-4804
4   Facsimile: (702) 382-4805

5   *Attorney for Plaintiff HB Productions, Inc.*

6

7                    **UNITED STATES DISTRICT COURT**

8                         **DISTRICT OF NEVADA**

9   HB PRODUCTIONS, INC., a Nevada          Case No.: 2:19-cv-1849
    Corporation
10
                        Plaintiff,          **COMPLAINT**
11
          v.                                **Jury Demand**
12
    DOE DEFENDANTS 1-5.
13
                        Defendants.
14

15        HP Productions, Inc. ("Plaintiff"), a Nevada corporation, alleges the following cause of

16   action against Defendants:

17                             **NATURE OF ACTION**

18        1.     This matter arises under the United States Copyright Act of 1976, as amended, 17

19   U.S.C. §§ 101, et seq. (the "Copyright Act").

20        2.     HP Productions alleges that each Defendant is liable for copyright infringement in

21   violation of 17 U.S.C. §§ 106 and 501, by having directly, indirectly, contributorily and/or

22   vicariously violated Plaintiff's exclusive rights in its copyrighted motion picture *Hellboy* (the

23   "Copyrighted Work" or "Work").  Attached hereto as **Exhibit 1** is a copy of the US Copyright

24   Office Certificate of Registration for *Hellboy* (USCO Reg. No. PA 2-176-664).

25                          **JURISDICTION AND VENUE**

26        3.     This is a civil action seeking damages and injunctive relief for copyright

27   infringement under the copyright laws of the United States (17 U.S.C. § 101 et seq.).

28        4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

WEIDE & MILLER, LTD.
10655 PARK RUN DRIVE
SUITE 100
LAS VEGAS,
NEVADA 89144
(702) 382-4804

FCA-w-0983                                    1

1 | 1331 (federal question) and 28 U.S.C § 1338(a) (copyrights).

2 |      5.     As shown on **Exhibit 2** attached to this Complaint, each of the Defendants' acts of

3 | copyright infringement occurred using an Internet Protocol address ("IP address") traced to a

4 | physical location within this District, and therefore, this Court has personal jurisdiction over each

5 | Defendant because: (a) each Defendant committed the infringing conduct alleged in this

6 | Complaint in the State of Nevada, or, at a minimum, committed the infringing conduct by

7 | downloading copyrighted material from or uploading it from Nevada residents located in this

8 | judicial district, and/or (b) has engaged in business transactions in the State of Nevada.

9 |      6.     Venue in this District is proper under 28 US.C. § 1391(b) and (c), because (1) a

10 | substantial part of the events or omissions giving rise to the claims occurred in this District; and,

11 | (2) at least a majority of the Defendants reside in this State. Additionally, venue is proper in this

12 | District pursuant to 28 U.S.C. § 1400(a) (venue for copyright cases), because at least a majority

13 | of the Defendants or Defendants' agents reside in this District.

14 | **PARTIES**

15 | **A.    Plaintiff HB Productions, Inc., and its Copyrighted Work**

16 |      7.     Plaintiff HB Productions is a corporation registered under the laws of the State of

17 | Nevada.  Plaintiff's principal offices are in Los Angeles, California, and Plaintiff is an affiliate of

18 | Millennium Media, a production company and distributor of a notable catalog of major motion

19 | pictures, including, among others, *Rambo, The Expendables, Olympus Has Fallen, London Has*

20 | *Fallen,* and the Copyrighted Work at issue in this Complaint, *Hellboy*. *See*

21 | www.millenniumfilms.com.

22 |      8.     Plaintiff is the owner of the exclusive rights under copyright in the United States

23 | in *Hellboy*.

24 |      9.     The plot of the Work is based on the graphic novels by Mike Mignola – Hellboy,

25 | caught between the worlds of the supernatural and human, battles an ancient sorceress bent on

26 | revenge. The Work was released in April 12, 2019.

27 |      10.    *Hellboy* was registered with the United States Copyright Office by HB

28 | Productions, Inc., effective April 12, 2019 and assigned Registration No. PA 2-176-664.  (Exhibit

WEIDE & MILLER, LTD.
10655 PARK RUN DRIVE
SUITE 100
LAS VEGAS,
NEVADA 89144
(702) 382-4804

FCA-w-0983             2

1).

11.     Under the Copyright Act, Plaintiff is the proprietor of all right, title, and interest in *Hellboy*, including the exclusive rights to control the reproduction and distribution of the Copyright Motion Picture to the public and the right to sue for past infringement.

12.     *Hellboy* contains wholly original material that is copyrightable subject matter under the laws of the United States. It is easily discernible as a professional work as it was created using professional performers, directors, cinematographers, lighting technicians, set designers and editors and with professional-grade cameras, lighting and editing equipment. It has significant value and has been created, produced and lawfully distributed at considerable expense.

13.     The viewing of *Hellboy* is currently or has been offered for sale in commerce, in theaters and is available for rental and/or purchase from Amazon, iTunes and Netflix, among others.

**B.     Defendants**

14.     Each Defendant is known to the Plaintiff only as an unidentified user of an IP address traced to a physical location within this District at a specific date and time (*see* Exhibit 2).

15.     An IP address is a number that is assigned by an Internet Service Provider (an "ISP") to a subscriber of its Internet connection services during a specified period of time.

16.     Identifying the subscriber assigned to an IP address at a specific time can lead to the identity of the probable user or users of the IP address at that precise time when infringing conduct was detected and thereby lead to a copyright infringement Defendant's true identity.

**GENERAL ALLEGATIONS**

**A.     Reasons for Seeking Relief from this Court**

17.     Plaintiff comes to court seeking relief because its Work has been illegally pirated over the Internet thousands of times worldwide, and many of these instances of piracy occurred in this judicial district.

WEIDE & MILLER, LTD.
10655 PARK RUN DRIVE
SUITE 100
LAS VEGAS,
NEVADA 89144
(702) 382-4804

FCA-w-0983                                        3

18.     The Defendants are not merely illegal viewers of the Plaintiff's Work, but they are also parties that maintained the motion picture in a manner that facilitated further distribution and infringing activity by others.

19.     The IP addresses that were used or accessed by the Defendants have also been observed as associated with the peer-to-peer exchange of numerous other titles in violation of others' copyrights through the BitTorrent network, and this activity indicates that the Defendants' misconduct has been willful and persistent.

20.     The volume and titles of the activity associated with each IP address accessed by each Defendant indicates that each Defendant is likely either the primary subscriber assigned to the IP address, someone who resides with the primary subscriber, or someone who is an authorized user of the IP address and had consistent and permissive access to it.

21.     The volume of the activity associated with the IP address accessed by each Defendant indicates that anyone actively using or observing activity on that IP address would likely be aware of that Defendant's conduct that is alleged in this Complaint.

22.     The Defendants had notice of the Plaintiff's rights through general publication and advertising, including, but not limited to, publication in the credits of the Work, the Plaintiff's copyrighted motion picture, which bear a legally enforceable copyright notice.

23.     On the specific dates and times of the infringing activities alleged in this Complaint (Exhibit 2), the IP addresses accessed by the Defendants were managed by ISPs, who on information and belief, generally assign an IP address to a single party for extended periods of time, often for months, and provide Wi-Fi systems with pre-installed security and passwords.

24.     ISPs generally notify and inform their subscribers about the importance of security, put their subscribers on notice that they are each responsible for the activity associated with their account, and caution their subscribers not to allow third party or unauthorized access.

25.     The records maintained by each respective ISP can identify either each Defendant, or, at a minimum, the subscriber who contracted with the ISP for service, who, in turn, is likely to have knowledge that will lead to the identity of each Defendant.

WEIDE & MILLER, LTD.
10655 PARK RUN DRIVE
SUITE 100
LAS VEGAS,
NEVADA 89144
(702) 382-4804

26.     The Plaintiff intends to seek limited expedited discovery, including leave to subpoena information from any relevant ISP, in order to ascertain the true identity of each Defendant and be in a position to timely and properly serve each Defendant with a Summons and a copy of this Complaint, or, more specifically, an Amended Complaint naming a Defendant or Defendants.

**B.      Defendants Used BitTorrent to Infringe Plaintiff's Copyrighted Movie**

27.     The acquisition, copying, and transfer of the Plaintiff's motion picture, its Copyrighted Work, is accomplished by the Defendants by their use of a BitTorrent protocol (in other words, set of computer rules) or "torrent."

28.     The BitTorrent protocol is different from other Peer-to-Peer ("P2P") networks. The BitTorrent protocol makes even small computers with low bandwidth capable of participating in large data transfers across a P2P network. Accordingly, the BitTorrent protocol has become the most common peer-to-peer Internet file sharing protocol used for distributing large amounts of data; indeed, it has been estimated that users of the BitTorrent protocol on the Internet account for over a quarter of all Internet traffic, and the creators and users of BitTorrent have developed their own lexicon for use when talking about BitTorrent.[1]

29.     The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In order to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users, called "peers," to join a network over the Internet, called a "swarm," of host computers to download and upload from each other to: (1) make files stored on a user's computer (*e.g.* motion pictures) available for copying by other users; (2) search for files stored on other computers; and, (3) transfer exact copies of files from one computer to another over the Internet.

---

[1] Definitions of relevant portions of the BitTorrent vocabulary, which are fully incorporated herein, are set forth in several federal cases, *See BKGTH Productions, LLC v. John Does 1-3, 5-10, 12, 15-16, Civil Action* No. 13-cv-01778-WYD-MEH, Dkt. #54, December 9, 2013, *citing Patrick Collins, Inc. v. John Does 1-28,* No. 12-13670, 2013 WL 359759 (E.D. Mich. Jan. 29, 2013).

WEIDE & MILLER, LTD.
10655 PARK RUN DRIVE
SUITE 100
LAS VEGAS,
NEVADA 89144
(702) 382-4804

FCA-w-0983                                                5

30.     The use of BitTorrent requires multiple intentional acts. Its use requires the loading of specific software, then it requires that the user join a swarm, or network. Then it requires the user to both search for a file and select the file chosen for downloading and distribution over the network.

31.     As each user, or peer, joins the network and requests a copy of a file, that user forms a type of social contract with the other users in the network to both download the file and be part of the network in order to allow the file to be downloaded by other users, *i.e.*, other peers in the network.  Each new peer requesting the file receives pieces of the data from every other peer who has already downloaded the file, and then that new peer, in turn, makes that content available to other users in the network.

32.     Because the BitTorrent protocol also generally limits a peer's ability to download unless he or she also uploads or shares, there is substantial incentive for each peer to remain online and continue to make files available for other peers to download, because remaining online maximizes his or her download speed and access to additional content.

33.     Defendants have been observed making the Plaintiff's copyrighted motion picture, its Copyrighted Work, available to others in furtherance of a BitTorrent network, without Plaintiff's authorization.

34.     Specifically, Plaintiff retained Maverickeye UG ("MEU") to identify the IP address that are being used by those individuals that are using the BitTorrent protocol and the Internet to reproduce, distribute, display or perform the Plaintiff's Work.

35.     MEU uses proprietary forensic software to enable the scanning of peer-to-peer networks for the presence of infringing transactions.

36.     MEU extracted the resulting data emanating from its investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of: E1F8020C12028A1C9AC791E790FDC53F3F65A3E4 ("the "Unique Hash Number). (*See* Exhibit 2).

WEIDE & MILLER, LTD.
10655 PARK RUN DRIVE
SUITE 100
LAS VEGAS,
NEVADA 89144
(702) 382-4804

FCA-w-0983                                              6

37.     The IP addresses, Unique Hash Number, and infringement dates and times are shown on the Exhibit 2, attached to this Complaint, accurately reflect what is contained in the evidence logs, and show:

(A)     Each Defendant had copied a piece of the Plaintiff's Work identified by the Unique Hash Number; and

(B)     Therefore, each Defendant was part of the same series of transactions.

38.     Through each of the transactions, each of the Defendants' computers or devices used their identified IP addresses to connect to the investigative server from a computer or device in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

39.     An agent or employee of MEU analyzed each BitTorrent "piece" distributed by each IP address listed on Exhibit 2 and verified that re-assemblage of the piece using a BitTorrent Client results in a fully playable digital motion picture of the Work that is identical, strikingly similar, or substantially similar to the Plaintiff's original Copyrighted Work.

40.     Further, an agent or employee of MEU confirmed that each Defendant was actively distributing, or "seeding," the Plaintiff's Work to other peers in the same swarm.

41.     Additional software using geolocation functionality is then used to confirm the geographical location of the computer used in the infringement.

42.     Though an IP address alone does not reveal the name or contact information of the account holder, in this case the Internet Subscriber, it does reveal the likely general location of the Defendant.

43.     IP addresses are distributed to ISPs by public, nonprofit organizations called Regional Internet Registries. These registries assign blocks of IP addresses to ISPs by geographic region.

44.     In the United States, these blocks are assigned and tracked by the American Registry of Internet Numbers. Master tables correlating the IP addresses with local regions are maintained by these organizations in a publicly available and searchable format. An IP address' geographic location can be further narrowed by cross-referencing this information with secondary

WEIDE & MILLER, LTD.
10655 PARK RUN DRIVE
SUITE 100
LAS VEGAS,
NEVADA 89144
(702) 382-4804

FCA-w-0983                                   7

1   sources such as data contributed to commercial databases by ISPs. This regional data of IP

2   addresses puts the Defendants in this judicial district.

3        45.    The end result of the forensic software are evidence logs of infringing transactions

4   and the IP addresses of the users responsible for copying and distributing the audiovisual work,

5   here *Hellboy*. The IP addresses, Unique Hash Number, dates and times, ISP and geolocation

6   contained in Exhibit 2 correctly reflect infringers using the IP addresses and that they were all

7   part of a "swarm" of users that were reproducing, distributing, displaying and/or performing the

8   Copyrighted Work in this judicial district.[2]

9   **C.    The Business of Piracy and Harm to Plaintiff and Society**

10        46.    Internet piracy, particularly BitTorrent piracy, though known as peer-to-peer file

11   sharing, is often a for-profit business, because many software clients, torrent sites, and networks

12   generate millions of dollars in revenue through sales and advertising.

13        47.    To increase the value of the advertising and sometimes subscription access sold by

14   torrent sites, many parties work to expand the pool of available titles and speed of downloads

15   available by increasing the number of member peers and, thus, the desirability of their clients and

16   networks. To accomplish this, they often reward participants who contribute by giving them faster

17   download speeds, greater access, or other benefits.

18        48.    Defendants' participation in the BitTorrent exchange of Plaintiff's Copyrighted

19   Work is the type of activity that torrent sites use to promote their business and likely directly

20   furthered the for-profit business of at least one torrent site.

21

22

23

24   [2] In logs kept in the ordinary course of business, local ISPs keep track of the IP addresses assigned to their customers/subscribers. Once provided with an IP address, plus the date and time of the detected and documented infringing activity, ISPs can use their subscriber logs to identify the subscriber with more

25   specificity, namely name, address and contact information. Only the ISP to whom a particular IP address has been assigned for use by its subscribers can correlate that IP address to a particular subscriber. From time to time, a subscriber of Internet services may be assigned different IP addresses from their ISP. Thus,

26   to correlate a subscriber with an IP address, the ISP also needs to know when the IP address was being used.

27   Unfortunately, many ISPs only retain for a very limited amount of time the information necessary to correlate an IP address to a particular subscriber, making early discovery necessary and important.

28

WEIDE & MILLER, LTD.
10655 PARK RUN DRIVE
SUITE 100
LAS VEGAS,
NEVADA 89144
(702) 382-4804

FCA-w-0983                     8

49.     Many parties, and likely some or all of the Defendants, have been compensated for their participation in expanding the availability of pirated content, such as the Plaintiff's Copyrighted Work, to others through BitTorrent networks, even if only through being granted greater access to other pirated content.

50.     The National Crime Prevention Council has recently underscored the serious ramifications that flow from motion picture copyright infringement:

> The individuals and industries that produce the original goods that are subsequently pirated are important to the U.S. economy. The entertainment industry in the United States employs 2.9 million people, or 2.1 percent of all U.S. jobs.  The 668,000 U.S. businesses that are involved in the creation or distribution of creative works represent more than 4 percent of all businesses. The U.S. movie and television industries alone produce a trade surplus of more than $13 billion each year. **But each year, more than 300,000 people that depend on copyrighted industries lose their jobs as a direct result of piracy. This includes not just the authors of creative works, but all those who derive the income from producing and distributing their work—movie theater staff, video store operators, movie extras, sound technicians, set decorators, even the caterers who supply the set or studio and the drivers that transport the crews.**

*See*  https://www.ncpc.org/resources/ip-theft/pirated-products, (December 21, 2017) (emphasis added).

51.     Therefore, the impact of piracy is far greater than the mere loss of a single sale or loss due to the distribution of one copy of a motion picture. Piracy undermines the economy, job base, and tax base on which our citizens rely, promotes a general disregard for the rights of others and the law, and is particularly harmful to persons and entities in the independent film industry, such as those persons and entities associated with the Plaintiff.  *See* https://www.theguardian.com/film/2014/jul/17/digital-piracy-film-online-counterfeit-dvds (December 21, 2017).

52.     Based on observed activity associated with Defendants' IP addresses, the Defendants are prolific proponents of the BitTorrent distribution system and thereby of advancing the BitTorrent economy of piracy.

53.     Accordingly, giving effect to 17 U.S.C. §§ 101 et seq., and the enforcement of the intellectual property rights of persons, such as Plaintiff, who are affiliated with independent film

WEIDE & MILLER, LTD.
10655 PARK RUN DRIVE
SUITE 100
LAS VEGAS,
NEVADA 89144
(702) 382-4804

FCA-w-0983      9

makers, and supporting their fight against the counterfeiting and piracy of their creative works, is critically important to the welfare of citizens in both the United States of America and the State of Nevada.

54.     By engaging in the infringement misconduct alleged in this Complaint, the Defendants deprived not only the producer of the Work from income derived from its showing in public theaters, but also all persons involved in the production and marketing of this motion picture, numerous owners of local theaters in Nevada where it has been shown, and their employees, numerous other local theaters where it might have otherwise been shown, and their employees, and, ultimately, the local Nevada economy. The Defendants' misconduct at issue in this case therefore deeply offends public policy and warrants fully granting Plaintiff's requested relief.

## JOINDER

55.     Each Defendant is alleged to have committed violations of 17 U.S.C. § 101 et. seq. within the same series of transactions or occurrences (e.g. downloading and distribution of the same Copyrighted Work owned by Plaintiff) and by using the same means (BitTorrent network) at or about the same time as established by the contemporary exchange of the files bearing the same Unique Hash Number.

56.     In this case, Plaintiff's Copyrighted Work or parts thereof bear the Unique Hash Number shown in Exhibit 2 and was included in at least one file of the related torrent file swarm exchange joined by each Defendant.

57.     In other words, all of the infringements alleged in this lawsuit arise from the same unique copy of Plaintiff's movie as evidenced by the same cryptographic hash ID. The Defendants are all part of the same "swarm" revealed by the Unique Hash Number. Each Defendant has access to the file(s) containing the Copyrighted Work and the files copied and shared in the swarm contain content matching the Copyrighted Work.

58.     Defendants' acts occurred in the same or related series of torrent transactions because each Defendant downloaded and/or distributed, or offered to distribute *Hellboy* to other infringers on the torrent network, including the other Defendants and/or other network users, who

WEIDE & MILLER, LTD.
10655 PARK RUN DRIVE
SUITE 100
LAS VEGAS,
NEVADA 89144
(702) 382-4804

1   in turn without permission from Plaintiff downloaded and/or distributed the Copyrighted Work.

2   59.   The temporal proximity of the monitored and observed acts of each Defendant,

3   together with the known propensity of BitTorrent participants to actively exchange files

4   continuously for hours and even days, or over a period of weeks or months, makes it apparent that

5   Defendants either directly exchanged the motion picture with each other, or did so through

6   intermediaries and each shared in the distribution of the Work to others bearing the same Unique

7   Hash Number.

8   60.   Therefore, Defendants each combined with other infringers on the BitTorrent

9   network to copy and/or distribute the Work, either in the same transaction or occurrence or a series

10   of intentionally related transactions or occurrences.

11   61.   This combination is established because using BitTorrent requires the

12   user/seeder/peer to intentionally download a program from BitTorrent that they then install on

13   their computer called a "client."

14   62.   The BitTorrent client is the user's interface during the downloading/uploading

15   process. The client may be free, supported by advertising, offer upgrades or add on services for a

16   fee, or a combination of several options. The initial seeder uses the client to divide the uploaded

17   content, in this case Plaintiff's Copyrighted Work, into pieces saved as electronic files and

18   delivers the pieces to different requesting peers.

19   63.   The recipient peers then automatically begin delivering the piece they just received

20   to other peers in the swarm.

21   64.   Once a peer has downloaded all the pieces, the client reassembles the pieces and

22   the peer is able to view the movie. Also, once a peer has downloaded all the pieces, that peer

23   becomes known as an "additional seed" because it now continues to download pieces to other

24   peers.

25   65.   A significant element of the BitTorrent economic model is that those who

26   participate and download movies not only share and upload movies with others without charge

27   among themselves, but participants are often rewarded through various means based on the

28   volume and availability of content seeders/peers in turn provide the network.

WEIDE & MILLER, LTD.
10655 PARK RUN DRIVE
SUITE 100
LAS VEGAS,
NEVADA 89144
(702) 382-4804

FCA-w-0983                                          11

66.     Each Defendant is a participant in the BitTorrent distribution of pirated files, and the substantially similar conduct of each Defendant furthers a model of business that profits from theft of intellectual property including Plaintiff's Copyrighted Work.

67.     Accordingly, pursuant to Fed.R.Civ.P. 20(a)(2) each of the Defendants is therefore properly joined at least because: (a) the infringement complained of herein by each of the Defendants was part of a series of transactions involving an identical copy of Plaintiff's Copyrighted Work; (b) the conduct of each Defendant jointly and collectively supported and advanced an economic business model of avoiding payment to the copyright holder and/or profiting from the piracy of Plaintiff's Copyrighted Work; (c) there are common questions of law and fact; and (c) each Defendant knowingly and actively participated in a combination to perform an illegal act and/or injure Plaintiff through use of the BitTorrent protocol to infringe Plaintiff's Copyrighted Work.

68.     Permissive joinder in the instant case permits a more efficient management of Plaintiff's claims against the several Defendants, reduces the costs to Plaintiff and Defendants and reduces the costs and burdens on the Court.

69.     Nevertheless, notice is hereby provided that on being specifically identified and on request from an identified Defendant, Plaintiff agrees to sever any Defendant that establishes material unfair prejudice in being joined in this matter and to proceed against each such Defendant individually.

## FIRST CLAIM FOR RELIEF

### (Copyright Infringement - 17 US.C. § 101 et seq.)

70.     Plaintiff repeats and realleges the allegations in the previous Paragraphs as if fully set forth and incorporates them herein by reference.

71.     Plaintiff owns the exclusive rights to the commercially released motion picture *Hellboy*, which has significant value and has been acquired, produced and created at considerable expense.

WEIDE & MILLER, LTD.
10655 PARK RUN DRIVE
SUITE 100
LAS VEGAS,
NEVADA 89144
(702) 382-4804

FCA-w-0983                                    12

72.     At all relevant times, Plaintiff has been the holder of the pertinent exclusive rights infringed by Defendants to the Copyrighted Work *Hellboy*. The Copyrighted Work is the subject of a valid Certificate of Copyright Registration, attached hereto as Exhibit 2.

73.     Plaintiff is informed and believes that each Defendant, without the permission or consent of Plaintiff, has used, and continues to use, an online media distribution system to wrongfully misappropriate, reproduce and distribute to the public, including by making available for distribution to others, the Copyrighted Work.

74.     On information and belief, each Defendant participated in a swarm and/or reproduced and/or distributed the same seed file(s) of the Work in digital form either directly with each other or through a series of knowingly intended and related transactions.

75.     Plaintiff has identified each Defendant by the IP address assigned to that Defendant by his or her ISP and the date and at the time at which the infringing activity of each Defendant was observed.

76.     In addition, or in the alternative, Defendants acted to obtain Internet access through an ISP and permitted, facilitated and materially contributed to the extensive use of the Internet through his/her ISP to infringe Plaintiff's exclusive rights under The Copyright Act by or with others.

77.     Defendants, with knowledge of the infringing conduct and under an obligation to monitor and stop infringement, failed to reasonably secure, police and protect the use of his/her Internet service against use for improper purposes such as piracy, including the downloading and sharing of Plaintiff's Copyrighted Work by others.

78.     Defendants had the obligation and reasonable ability to supervise and control the activity constituting the infringement.

79.     In doing so, each Defendant has directly, indirectly, contributorily and/or vicariously violated Plaintiff's exclusive rights of at least reproduction, preparation of derivative works, and distribution of the Copyrighted Work.

80.     Each of the actions of the Defendants described herein constitute infringement of Plaintiff's exclusive rights protected under 17 US.C. § 101 et seq.

WEIDE & MILLER, LTD.
10655 PARK RUN DRIVE
SUITE 100
LAS VEGAS,
NEVADA 89144
(702) 382-4804

FCA-w-0983                                    13

81.     The Copyrighted Work contains a copyright notice advising the viewer that the motion picture is protected by federal copyright laws. Each of the Defendants' actions with respect to copyright infringement and other acts described herein were made with full knowledge of Plaintiffs ownership of the copyrights in the Work.

82.     The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money.

83.     Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting each Defendant from further infringing Plaintiff's Copyrighted Works and ordering that each Defendant destroy all copies of the Work made in violation of the Plaintiff's copyrights.

84.     By reason of the foregoing acts, if such remedy is elected at trial, Plaintiff is entitled to statutory damages from each Defendant pursuant to 17 USC §504, et seq. Alternatively, at Plaintiff's election, Plaintiff is entitled to its actual damages incurred as a result of each Defendants' acts of infringement plus any profits of Defendants attributable to the infringements in an amount of at least $10,000.00.

85.     The foregoing acts of infringement have been willful or willfully blind, intentional, and in disregard of, and with indifference to, the copyrights of Plaintiff.

86.     As a result of each Defendant's infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to its attorneys' fees and costs pursuant to 17 US.C. § 505.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against each Defendant as follows:

(A)     A finding and judgment that each Defendant has infringed Plaintiff's copyright in the motion picture *Hellboy*.

(B)     Pursuant to 17 U.S.C. §502, an order preliminarily and permanently enjoining each Defendant from directly or indirectly infringing Plaintiff's rights in *Hellboy* including without limitation by using the Internet to reproduce or copy, distribute or otherwise make available for distribution to the public *Hellboy*, except pursuant to a lawful license or with the express authority

WEIDE & MILLER, LTD.
10655 PARK RUN DRIVE
SUITE 100
LAS VEGAS,
NEVADA 89144
(702) 382-4804

1   of Plaintiff.

2       (C)     Pursuant to 17 U.S.C. § 503, an order that each Defendant destroy all copies of

3   *Hellboy* that Defendant has downloaded onto any computer hard drive or server without Plaintiff's

4   authorization and shall destroy all copies of *Hellboy* transferred onto any physical medium or

5   device in each Defendant's possession, custody, or control.

6       (D)     An order that each Defendant file with this Court and serve on Plaintiff, within 30

7   days of service of notice of judgment, a report in writing under oath setting forth in detail the

8   manner and form in which Defendants have complied with the terms of the ordered relief.

9       (E)     Pursuant to 17 U.S.C. § 504 or other applicable provisions, for actual damages in

10  the amount of at least $10,000.00, or statutory damages, from each Defendant, at the election of

11  Plaintiff, and a finding of willful infringement.

12      (F)     Pursuant to 17 U.S.C. § 505, for Plaintiff's reasonable attorney's fees and costs.

13      (G)     For such other and further relief as the Court deems proper.

14                              **<u>DEMAND FOR JURY TRIAL</u>**

15      Plaintiff hereby demands a trial by jury on all issues so triable.

16      Dated: October 1, 2019.

17                                          **WEIDE & MILLER, LTD.**

18                                          */s/ F. Christopher Austin*
                                            F. Christopher Austin (NV Bar No. 6559)
19                                          caustin@weidemiller.com
                                            10655 Park Run Drive, Suite 100
20                                          Las Vegas, NV 89144
21                                          *Attorney for Plaintiff HB Poductions, Inc.*

22

23

24

25

26

27

28

WEIDE & MILLER, LTD.
10655 PARK RUN DRIVE
SUITE 100
LAS VEGAS,
NEVADA 89144
(702) 382-4804

FCA-w-0983                                  15

# EXHIBIT 1

# EXHIBIT 1

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Karyn A. Temple*

United States Register of Copyrights and Director

**Registration Number**

## PA 2-176-664

**Effective Date of Registration:**
April 12, 2019

---

## Title

| | |
|---|---|
| **Title of Work:** | Hellboy |
| **Previous or Alternate Title:** | Hellboy 3 |
| **Nature of Claim:** | Motion Picture |

## Completion/Publication

| | |
|---|---|
| **Year of Completion:** | 2019 |
| **Date of 1st Publication:** | April 10, 2019 |
| **Nation of 1st Publication:** | Belgium |

## Author

| | |
|---|---|
| • **Author:** | HB Productions, Inc. |
| **Author Created:** | entire film |
| **Work made for hire:** | Yes |
| **Domiciled in:** | United States |
| **Anonymous:** | No |
| **Pseudonymous:** | No |

## Copyright Claimant

| | |
|---|---|
| **Copyright Claimant:** | HB Productions, Inc.<br>318 N. Carson St., #208, Carson City, NV 89701 |

## Limitation of copyright claim

| | |
|---|---|
| **Material excluded from this claim:** | Motion Picture Screenplay, pre-registration of film |
| **Previously registered:** | Yes |
| **Previous registration and year:** | PAu 3-916-707, PRE000010470, 2017, 2018 |
| **Basis of current registration:** | This is a changed version of the work. |
| **New material included in claim:** | Cinematographic material including performance, production as a motion picture, editing and all audio visual elements including photography dialogue, music and special effects |

Page 1 of 2

## Certification

|  |  |
|---|---|
| **Name:** | Rick Eyler |
| **Date:** | April 11, 2019 |

|  |  |
|---|---|
| **Correspondence:** | Yes |
| **Copyright Office notes:** | Regarding special handling request: Claim upgraded for Special Handling per request received on 5/21/2019   due to pending or prospective litigation. Registration decision and certificate issued on 5/24/2019. |

# EXHIBIT 2

# EXHIBIT 2

| No | IP | Port | Client | Hit Date UTC | File Name | File Hash | ISP | Region | City | Province |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 68.104.57.53 | 15359 | [unknown Client] | 2019-09-15 18:23:44 | Hellboy (2019) [WEBRip] [1080p] [YTS.LT] | SHA1: E1F8020C12028A1C9 | Cox Communi | Nevada | Las Vegas | Clark County |
| 2 | 98.160.134.253 | 34674 | µTorrent Mac 1.8.7 | 2019-07-21 14:16:25 | Hellboy (2019) [WEBRip] [1080p] [YTS.LT] | SHA1: E1F8020C12028A1C9 | Cox Communi | Nevada | Las Vegas | Clark County |
| 3 | 70.189.175.184 | 50804 | libtorrent 1.0.0 | 2019-07-16 00:30:49 | Hellboy (2019) [WEBRip] [1080p] [YTS.LT] | SHA1: E1F8020C12028A1C9 | Cox Communi | Nevada | Las Vegas | Clark County |
| 4 | 68.108.26.187 | 62222 | qBittorrent 4.1.6 | 2019-07-13 22:20:55 | Hellboy (2019) [WEBRip] [1080p] [YTS.LT] | SHA1: E1F8020C12028A1C9 | Cox Communi | Nevada | Las Vegas | Clark County |
| 5 | 70.173.197.128 | 8999 | qBittorrent 4.1.6 | 2019-07-12 18:01:04 | Hellboy (2019) [WEBRip] [1080p] [YTS.LT] | SHA1: E1F8020C12028A1C9 | Cox Communi | Nevada | Las Vegas | Clark County |